# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>$50,000 IN U.S. CURRENCY,<br><br>Defendant,<br><br>TYRONE HAMILTON and<br>JENNIFER FROST,<br><br>Claimants. | CASE NO. 3:23-cv-00733-JRK<br><br>JUDGE JAMES R. KNEPP II<br><br>MAGISTRATE JUDGE DARRELL A. CLAY<br><br>**REPORT AND RECOMMENDATION ON CLAIMANTS' MOTION TO DISMISS**<br>[ECF #9] |

## INTRODUCTION

In this civil forfeiture action that was referred to me pursuant to Local Civil Rule 72.2 (non-document entry of Apr. 11, 2023), Claimants Tyrone Hamilton and Jennifer Frost have moved to dismiss the United States' Complaint in Forfeiture against *in rem* Defendant $50,000 In U.S. Currency (Defendant Currency). (ECF #9). The United States filed a brief in opposition (ECF #12), Claimants have not filed a reply, and the deadline for doing so has passed. Therefore, this matter is ripe for disposition. For the reasons that follow, I recommend the District Court **DENY** the Motion to Dismiss.

## BACKGROUND FACTS[1]

According to the Complaint, on November 14, 2022, officers of the Toledo Police Department conducted a traffic stop on a vehicle after it failed to signal before making a turn.

---

[1] As in ordinary civil litigation, when deciding a motion to dismiss a forfeiture claim, "[a]ll well-pleaded facts in the complaint are assumed to be true and are viewed in the light most favorable to the plaintiff. Allegations that merely state legal conclusions, however, need not be accepted as true." *United States v. $32,100 in United States Currency*, No. 16-1339-EFM-JPO, 2017 WL 1062481, at *2 (D. Kan. Mar. 21, 2017) (footnote omitted).

1

(ECF #1 at PageID 2). Officers observed the driver and Mr. Harrison, who was riding as a passenger, "appeared nervous." (*Id.* at PageID 3). Officers "also detected an odor of marijuana emanating from the vehicle." (*Id.*).

Mr. Hamilton was determined to have rented the vehicle. (*Id.*). Although he initially refused to identify himself, Mr. Hamilton ultimately confirmed his identity and provided his date of birth. (*Id.*). After running record checks on the driver and Mr. Hamilton, officers learned both had outstanding arrest warrants. (*Id.*).

Following a search of the vehicle, officers discovered marijuana and $50,000 in cash. (*Id.*). The money was in rubber-banded stacks of $2,000 each and was contained in a plastic bag that was inside a black backpack that was located behind the driver's seat. (*Id.*). Mr. Hamilton told law enforcement "that the cash was from his 'business adventures.'" (*Id.*).

The Complaint further alleges:

15. HAMILTON is associated with a business named Dream Vision Real Estate, LLC (Dream Vision) which has an address of 21050 Kittridge St., Canoga Park, California and HAMILTON is listed as a business partner in Dream Vision with A.J.

16. Dream Vision has both LinkedIn and Facebook profiles but no recent updates, stock photos or customer reviews and the business has current estimated sales of $127,545.

17. HAMILTON's business partner A.J. has a 2000 state felony conviction for permitting drug abuse; a 2004 state felony conviction for drug trafficking; and a 2014 drug possession charge and HAMILTON has a 2001 state conviction for involuntary manslaughter; a 2006 arrest for assaulting a police officer; and a 2015 domestic battery arrest.

18. Review of banking account information for Dream Vision Real Estate, LLC, has determined substantial suspicious cash activity related to the account, including:

    a. the source of deposited funds could not be verified; and

    b. no purpose could be identified for the issuance of cashier's checks funded from the account made payable to third parties.

(*Id.* at PageID 4).

The Complaint concludes by alleging that the Defendant Currency is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6) because "it constitutes proceeds from illegal drug trafficking activities, and/or was used – or was intended to be used – in exchange for illegal

controlled substances, and/or was used – or was intended to be used – to facilitate illegal drug trafficking activities." (*Id.*)

## LAW AND ANALYSIS

The United States' Complaint seeks civil forfeiture pursuant to 21 U.S.C. § 881(a)(6). (ECF #1 at PageID 1).[2] In pertinent part, § 881 provides that "[a]ll moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys . . . used or intended to be used to facilitate any violation of this subchapter" are subject to forfeiture to the United States. 18 U.S.C. § 881(a)(6).

In their motion, Claimants argue the Complaint "is devoid of non-conclusory allegations concerning criminal misconduct associated with the Defendant monies relevant herein." (ECF #9-1 at PageID 35). Specifically, Claimants argue the Complaint does not demonstrate the United States could prove at trial that the Defendant Currency was "tainted." (*Id.* at Page 38). Claimants also allege that jurisdiction is not proper in this Court in light of the restrictions found in Ohio Revised Code § 2981.14(B). (*Id.* at 42).

For the reasons that follow, I find neither of these arguments persuasive. I thus recommend the District Court **DENY** Claimants' motion in all respects.

A.   The Complaint satisfies the pleading requirements of Supplemental Rules E and G.

Claimants first argue the Complaint fails to set forth allegations sufficient to meet the requirements of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Action. In pertinent part, Supplemental Rule E – which is expressly made applicable to *in rem* actions such as this one – provides that a complaint "shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Supp. R. E(2)(a). Supplemental Rule G further provides that for *in rem* forfeiture actions, the complaint must:

(a)   be verified;

---

[2] The Complaint also invokes forfeiture under 18 U.S.C. § 924(d)(1). (ECF #1 at PageID 1). But that statute only relates to forfeiture of firearms or ammunition, and is thus inapplicable to this case. I thus omit further discussion of § 924(d)(1).

3

(b)     state the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue;

(c)     describe the property with reasonable particularity;

(d)     if the property is tangible, state its location when any seizure occurred and— if different—its location when the action is filed;

(e)     identify the statute under which the forfeiture action is brought; and

(f)     state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

Supp. R. G(2). Claimants do not advance any argument that subsections (a) through (e) are not satisfied, focusing instead on whether the subsection (f) has been met. Specifically, Claimants allege: "Here, the Complaint is patently inadequate and unacceptably vague as it fails to disclose any facts tending to show the currency seized was obtained through illicit activity or, otherwise, why the Government has designated the defendant Currency as contraband." (ECF #9-1 at PageID 38).

In *United States v. Aguilar*, 782 F.3d 1101 (9th Cir. 2015), the Ninth Circuit provided the following summary of the pleading standards for forfeiture complaints:

> Few courts have interpreted Supplemental Rule G(2)(f), but the advisory committee's note indicates that the language is designed to codify the "standard" that "has evolved" from case law interpreting its predecessor—Supplemental Rule E(2)(a)—and "carry this forfeiture case law forward without change." Supplemental Rule E(2)(a) requires that a complaint in an admiralty action "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading."

> The leading case on Supplemental Rule E(2)(a)—again as identified by the advisory committee's note to Supplemental Rule G(2)—is *United States v. Mondragon*, 313 F.3d 862 (4th Cir. 2002). *See Gang Luan v. United States*, 722 F.3d 388, 398 n.14 (D.C. Cir. 2013) (interpreting the advisory committee's note as "explaining that Supplemental Rule G(2)(f) was intended to codify the interpretation of Rule E(2)(a) set out in *Mondragon*"). In *Mondragon*, the Fourth Circuit was clear that Supplemental Rule E(2)(a) does not articulate an onerous standard. Looking to the text of the rule, it held that a complaint must "state the circumstances giving rise to the forfeiture claim with sufficient particularity that the claimant] can commence a meaningful investigation of the facts and draft a responsive pleading" and "permit a reasonable belief for pleading purposes that [the property in question] is subject to forfeiture." *Id.* at 866–67.

*Id.* at 1108-09. Put succinctly: "The standard is higher than 'notice pleading,' but it remains a 'low bar.'" *United States v. Real Property Known as 223 Spring Water Lane*, No. 6:18-CV-315-REW, 2021

4

WL 144245, at *2 (E.D. Ky. Jan. 15, 2021) (citing *Aguilar*, 782 F.3d at 1109). "The complaint 'must provide reasonably detailed facts' that, if accepted as true, support a reasonable belief 'that the United States, after the completion of the discovery process,' could demonstrate by a preponderance of the evidence that the property is tainted and subject to forfeiture." *Id.* "The measure is not the trial standard but whether the complaint states facts with sufficient detail to support a reasonable belief that the Government can hit the eventual standard 'at trial.'" *Id.* Moreover:

> The Court stresses the stage and posture, as it assesses the pleading, not the proof. The Rule and forfeiture statute make plain that the Government need not allege every supportive fact, and the Government's substantiating proof may post-date the complaint. *See* Rule G(8)(b) ("In an action governed by [§ 983(a)(3)(D) ] the complaint may not be dismissed on the ground that the government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property. The sufficiency of the complaint is governed by Rule G(2)."); *United States v. Funds in the Amount of $33,534.93 Account No. Ending **8429 From Bank of Am.*, No. CV 11-675 LH/KBM, 2013 WL 12333983, at *6 (D.N.M. Mar. 25, 2013) ("The Court concludes that the totality of facts alleged are sufficiently detailed to apprise Claimant of the basis for the forfeiture action, allowing her to respond by contesting the source of these Funds. She is sufficiently informed to be able to conduct a meaningful investigation. Supplemental Rule G's particularity requirements have been met and thus the Government is able to avoid dismissal under Rule 12(b)(6).") (citing *Mondragon*, 313 F.3d at 866-67).

*Id.* at *3.

I find the Complaint provides sufficiently reasonably detailed facts that, taken collectively, meet the "low bar" required for pleading a forfeiture case and allow the Claimants to conduct a reasonable investigation. As noted above, the Complaint alleges that as a result of the traffic stop, law enforcement detected the smell of marijuana and a subsequent search of the vehicle "found two packs of marijuana." (ECF #1 at PageID 3). Notwithstanding changing state laws and public attitudes regarding marijuana, it is indisputable that "[f]ederal law prohibiting the sale of marijuana is valid, despite any state law suggesting medical necessity for marijuana." *United States v. Scarmazzo*, 554 F. Supp. 2d 1102, 1109 (E.D. Cal. 2008), *aff'd*, 421 F. App'x 670 (9th Cir. 2011), *cert. denied*, 563 U.S. 968 (2011); *see also Gonzales v. Raich*, 545 U.S. 1, 27 (2005) (noting that the Controlled Substances Act "designates marijuana as contraband for *any* purpose"). Thus, if proven, at least one of the Claimants may have concurrently possessed a controlled substance and the Defendant Currency.

5

Further, the vehicle search yielded a backpack within which was a plastic bag containing multiple stacks comprising an unusually large amount of cash. Claimants' brief notes that "possession of a large sum of cash can be strong evidence that the money is linked to drug activity," particularly where the person holding the cash does not have verifiable income that is likely sufficient to yield the funds in question. (ECF #9-1 at PageID 39) (citing *United States v. U.S. Currency in the Amount of $150,660*, 980 F.2d 1200, 1206 (8th Cir. 1992)). The Sixth Circuit agrees. *See United States v. $99,990.00 in U.S. Currency*, 69 F. App'x 757, 764 (6th Cir. 2003); *United States v. $118,170.00 in U.S. Currency*, 69 F. App'x 714, 717 (6th Cir. 2003) (noting that "possession of a large amount of cash is strong evidence that the money was furnished or intended to be furnished in return for drugs") (quotation omitted), *cert. denied sub nom. Foxworth v. United States*, 552 U.S. 1187 (2008).

Claimant Mr. Hamilton is alleged to have said the money "was from his 'business adventures.'" (ECF #1 at PageID 3). Subsequently, the United States learned that Mr. Hamilton was associated with one entity whose social media accounts contain "no recent updates, stock photos or customer reviews," and has estimated sales – not profits – of $127,545. (*Id.* at PageID 4). Without more, it is an open question whether the income from this entity would be sufficient to generate profit sufficient to explain the amount of cash Mr. Hamilton had on hand. "The Sixth Circuit has held that unrebutted evidence of insufficient income does satisfy the Government's burden of proof in certain contexts." *United States v. Twenty One Thousand Dollars ($21,000) in U.S. Postal Money Orders & Seven Hundred Eighty-Five Dollars ($785.00) in U.S. Currency*, 298 F. Supp. 2d 597, 604 (E.D. Mich. 2003) (citing *United States v. $174,206.00 in United States Currency*, 320 F.3d 658, 662 (6th Cir. 2003)).

The United States also learned that Mr. Hamilton's partner in the entity has a history of drug-related convictions, while Mr. Hamilton's criminal history includes a conviction for involuntary manslaughter and arrests for assault on a police officer and domestic battery. (*Id.*). Additionally, subsequent investigation disclosed that Mr. Hamilton's business entity has engaged in what the United States characterizes as "suspicious cash activity," including unverified sources of deposited funds and "no purposes could be identified for the issuance of cashier's checks funded from the account made payable to third parties." (*Id.*). Such allegations, if proven, may enhance the likelihood that the funds in question originated from other than legitimate sources.

6

In asserting the United States' Complaint fails to allege a sufficient fact basis, Claimants' motion omits any mention of the allegations concerning "suspicious cash activity" of Mr. Hamilton's entity.

Taken collectively, I find the Complaint alleges a factual basis sufficient to seek forfeiture under § 881(a)(6). *Cf. $714,206.00 in U.S. Currency*, 320 F.3d at 663 (noting that possession of controlled substances and "large amount of cash that is unexplained by legitimate sources of income" sufficiently met government's burden for forfeiture under § 881(a)(6)). Accordingly, I recommend the District Court reject Claimants' challenge to the sufficiency of the Complaint's allegations supporting forfeiture.

**B.     Jurisdiction is appropriate in this court notwithstanding Ohio Rev. Code § 2981.14(b).**

Claimants, relying on Ohio Revised Code § 2981.14(B), allege that this Court lacks jurisdiction over potential forfeiture of the Defendant Currency. In pertinent part, § 2981.14 provides as follows:

> A law enforcement agency or prosecuting authority shall not directly or indirectly transfer or refer any property seized by the agency or authority to any federal law enforcement authority or other federal agency for purposes of forfeiture under federal law unless the value of the seized property exceeds one hundred thousand dollars, excluding the potential value of the sale of contraband, or the property is being transferred or referred for federal criminal forfeiture proceedings.

Ohio Rev. Code § 2981.14(B). Claimants aver that because the Defendant Currency was seized by a City of Toledo Police Officer, who issued a receipt for it, there was no authority to transfer those funds to the United States for potential forfeiture. (ECF #9-1 at PageID 43 & 47).

Claimants cite *State v. Grace*, 205 N.E.3d 1255 (Ohio Ct. App. 2023), in support of their argument. But that case, involving a request under state law to return funds following entry of a *nolle prosequi*, is distinguishable because the evidence showed the funds were not seized by federal authorities. Here, the United States argues the Defendant Currency was seized in the first instance by federal agents and taken into custody by the Department of Homeland Security. The United States provides an affidavit from Special Agent Andrew Watson attesting that after the Defendant Currency was located in the rental car, it was "then taken into custody by the Department of Homeland Security and I completed a Custody Receipt for Seized Property and Evidence (DHS 6051S)." (ECF #12-1 at PageID 67). A copy of the DHS6051 is attached to Special Agent Watson's affidavit. (ECF #12-2 PageID 68).

7

This paper trail is sufficient to demonstrate jurisdiction exists in this Court for the United States to seek forfeiture under federal law. Because federal agents took custody of the Defendant currency in the first place, Ohio Revised Code § 2981.14(B)'s restrictions on state law enforcement transferring seized property to federal authorities are not operative. But even if Ohio law had been contravened, that fact would not preclude this Court from hearing the United States' forfeiture claim. *See United States v. One Ford Coupe Auto.*, 272 U.S. 321, 325 (1926) (holding that the United States may adopt seize of property forfeitable under federal law even if seized by a local official or one with no authority to make the seizure); *United States v. $6,207.00 in U.S. Currency*, No. 2:08-CV-999, 2009 WL 2169167, at *7 (M.D. Ala. July 20, 2009) (ruling that the DEA may adopt a state seizure and the district court may assert *in rem* jurisdiction over property even if state authorities turned the property over without legal authority to do so).

Accordingly, I recommend the District Court reject Claimants' jurisdiction challenge.

### CONCLUSION AND RECOMMENDATION

For the foregoing reasons, I recommend the District Court **DENY** Claimants' Motion to Dismiss.

Dated: July 28, 2023

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

### OBJECTIONS, REVIEW, AND APPEAL

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge.** *See* **Fed. R. Civ. P. 72(b)(2);** *see also* **28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.**

**Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation.** *Berkshire v. Dahl*, **928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to**

8

object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).